IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
U.S. District Court
District of Kansas

03/31/2026

**Clerk, U.S. District Court**
**By:__JAL__Deputy Clerk**

MARSHALL DEWAYNE WILLIAMS,

  **Plaintiff,**

  **v.**          **CASE NO.  26-3036-JWL**

UNITED STATES OF AMERICA, et al.,

  **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff Marshall DeWayne Williams is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

## I.  Nature of the Matter Before the Court

Plaintiff, a federal prisoner housed at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"), brings this pro se action.  Plaintiff's claims arose during his incarceration at FCI-McKean in Lewis Run, Pennsylvania ("FCIM").

Plaintiff's Complaint involves a dispute over his "legal materials" and an allegation of stalking.  He alleges that his legal materials (briefs, transcripts, notes, photocopies, case law, research materials) for "dozens of underlying cases formerly and currently pending in United States district and appeals courts" have been confiscated.  (Doc. 1, at 4.)  He states that K. Allen, Case Manager Coordinator at FCIM, took six boxes of his materials without justification and without following the policy of the Board of Prisons ("BOP").  Allen told Plaintiff that she would "throw it all in the trash" on April 11, 2026.  *Id*. at 5.

1

Plaintiff was transferred to FCIM in 2025, but his legal materials did not arrive for at least four or five months. During the delay, Plaintiff spoke with Warden Newman about his property and was seen doing so by Associate Warden Wilson. According to Plaintiff, Wilson was angry that Plaintiff had gone over her head. Plaintiff was issued a warning for loitering in unauthorized areas. Plaintiff signed the warning but wrote "I disagree" on the form. *Id*. at 7. He was then charged with refusing an order and lying or falsifying a statement and taken to the Segregation Housing Unit ("SHU"). *Id*. Days later, the disciplinary committee ordered him to remain in the SHU for 30 days on mattress restriction. *Id*. Plaintiff was told by Officer Weseman that Wilson was accusing Plaintiff of stalking her. When Plaintiff was transferred to FCIL, he was told to be careful because he had been transferred for stalking Wilson.

Plaintiff states that as a result of the allegation, he is now precluded from prison jobs around women and his prison reputation, earned over 42 years, has been jeopardized and questioned. *Id*. at 8. He has filed this lawsuit to recover for damages and to "correct the injuries" he has suffered. *Id*. Plaintiff lists the following claims: property loss, personal injuries, assault, battery, false imprisonment, false arrest, abuse of process, malicious prosecution, libel, slander, misrepresentation, deceit, cruel and unusual punishment, and machination. *Id*. He asserts violation of his Fifth Amendment due process rights and Eight Amendment right to be free from cruel and unusual punishment.

Plaintiff also includes allegations about the conditions in the SHU at FCIM. First, he alleges that he suffered injury to his neck, shoulders, hips, and knees from the mattress restriction. He further claims that inmates were given minimal amounts of food, deprived of medical treatment, sprayed with pepper spray if they complained, exposed to mold, not allowed to exchange clothing for over six weeks, and only allowed to shower every week or two. *Id*. at 10.

2

Plaintiff names as defendants the United States of America; D. Alatary, Warden of FCIL; A. Newman, Warden of FCIM; K. Allen, Case Manager Coordinator, FCIM; and H. Wilson, Associate Warden, FCIM.  Plaintiff seeks the return of his legal materials, compensatory damages of $10 million, and punitive damages of $10 million.  *Id*. at 12-14

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S.

4

Ct. at 1974).

## III.  DISCUSSION

Plaintiff asserts many causes of action.  They fall into two categories: tort claims and constitutional claims.

### A. Tort Claims

The only avenue for a federal prisoner to bring most state law tort claims based on the actions of a BOP employee acting within the scope of his employment is through the Federal Tort Claims Act ("FTCA").  *See* 28 U.S.C. § 2679.  The FTCA, 28 U.S.C. §§ 1346(b)(1), 2671–2680, "allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties." *Ingram v. Faruque*, 728 F.3d 1239, 1245 (10th Cir. 2013) (citing § 1346(b)(1)).  The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *Franklin Sav. Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) (citing 28 U.S.C. § 2679(a), which provides that "the FTCA remedy is 'exclusive' for all 'claims which are cognizable under section 1346(b)'").

Plaintiff mentions several tort claims.  His first problem is that the FTCA has procedural and jurisdictional requirements that he has not met.  *See Staggs v. U.S. ex rel. Dep't of Health and Human Servs.*, 425 F.3d 881, 885 (10th Cir. 2005) (stating that the "FTCA's presentation requirements are jurisdictional and cannot be waived") (citation omitted).  The Tenth Circuit has summarized the FTCA requirements as follows:

> Under the FTCA, filing an administrative claim with the appropriate federal agency is a prerequisite to bringing a civil action against the United States for damages for the negligence or wrongful act of any United States employee. 28 U.S.C. § 2675(a); *Three-M Enterprises, Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977) . . .  A claim is deemed presented when a federal agency receives from a claimant

"an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in sum certain for . . . personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). "[B]ringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989); *see also Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991).

*Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994). Section 2675(a) provides that "[a]n action shall not be instituted" upon an FTCA claim "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." *Id*. at n.1. The amount of damages claimed in a lawsuit under the FTCA is limited to "the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b); *see McNeil v. United States*, 508 U.S. 106, 108 n.2 (1993) (citing 28 U.S.C. § 2675(a)).

Therefore, exhaustion of administrative remedies is a prerequisite to suit under the FTCA, and courts lack jurisdiction over FTCA claims not presented to the appropriate federal agency. *See* 28 U.S.C. § 2675(a); *Greenlee v. U.S. Postal Serv.*, 247 F. App'x 953, 954–55 (10th Cir. 2007). "Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed." *Bradley v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted). "The requirements are jurisdictional and cannot be waived." *Id*. (citation omitted); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.") (citing 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 113; *Pipkin v. U.S. Postal Service*, 951 F.2d 272, 273 (10th Cir. 1991)).

Plaintiff has not alleged facts establishing that he exhausted the administrative tort claim remedy in a proper and timely manner prior to filing this action. This deficiency bars the Court from hearing any of Plaintiff's FTCA claims.

Moreover, several of the claims Plaintiff mentions cannot be brought under the FTCA. Libel, slander, misrepresentation, and deceit are not actionable under the FTCA. 28 U.S.C. § 2680(h). Plaintiff's claim based on the confiscation or loss of his personal property is also excepted from the FTCA. *See* 28 U.S.C. § 2680(c) (exception to FTCA's waiver of sovereign immunity includes claims arising from the detention of property by law enforcement officers); *Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 228 (2008) (holding that BOP officers who allegedly lost inmate's personal property during his transfer to another prison were "law enforcement officers" as the term is used in § 2680(c)); *Williams v. Mestas,* 355 F. App'x 222 (10th Cir. 2009) (holding that FTCA claim against prison officials arising from mishandling of personal property during transfer to another institution was improper because claim was barred by sovereign immunity); *Robinson-Bey v. Feketee,* 219 F. App'x 738 (10th Cir. 2007) (holding that FTCA did not waive sovereign immunity as to inmate's claim for lost or stolen property allegedly in possession of prison officials); *Greer v. U.S.*, 72 F. App'x 793, 797 (10th Cir. 2003) (unpublished) (finding United States did not waive sovereign immunity where legal documents were "goods" and prison employees are "law enforcement officers" under 28 U.S.C. § 2680(c)).

Further, to the extent that Plaintiff asserts that the loss of his legal property was an unauthorized intentional act under 28 U.S.C. § 2680(h), a claim premised on an alleged intentional destruction of property is also outside the scope of the FTCA. *See Williams*, 355 F. App'x at 225 ("Insofar as Mr. Williams might argue that the property damage was intentional, moreover, the statute would not waive sovereign immunity for that type of intentional action.") (citing 28 U.S.C.

§ 2680(h); *Dalton v. United States*, 2022 WL 21808236, at *2–4 (D. Colo. 2022), *adopted by* 2022 WL 21808239 (D. Colo. 2022) (citing *see* 28 U.S.C. § 2680(h) (the waiver of immunity for intentional torts is limited to assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution); *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied[.]")).

"Congress . . . did provide an administrative remedy for lost property claimants . . . Federal agencies have authority under 31 U.S.C. § 3723(a)(1) to settle certain 'claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment.'" *Ali*, 552 U.S. at n.7. The claim must be presented to the head of the agency within one year after it accrues. 31 U.S.C. § 3723(b).

Therefore, whether Plaintiff asserts that the loss of his legal files was intentional or negligent, the Court lacks subject matter jurisdiction over his FTCA claim, and Plaintiff's Complaint is subject to dismissal.

Other claims Plaintiff mentions, such as assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, and machination, are merely listed with no supporting factual allegations or explanation. As explained above, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570.

For these reasons, Plaintiff fails to state an actionable claim under the FTCA.

**B. Civil Rights/Constitutional Claims**

Plaintiff also asserts that the defendants violated some of his constitutional rights. Plaintiff's civil rights claims are subject to dismissal because he filed this lawsuit in the wrong court. General venue principles are found in 28 U.S.C. § 1391(b), which provides that a civil action may be brought in a judicial district where any defendant resides, a district where a substantial part of the events giving rise to the claim occurred, or, if no district meets those criteria, a district in which a defendant is subject to the court's personal jurisdiction in the action. The Court has reviewed the Complaint and concludes it is clear from the face that the District of Kansas is not a proper venue for Plaintiff's civil rights claims. While Plaintiff names the warden at FCIL as a defendant, all of the alleged events giving rise to Plaintiff's claims occurred while Plaintiff was at FCI-McLean in Pennsylvania.

When a case is brought in the wrong venue, the district court in which the case is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). To determine whether transfer is in the interest of justice, the Court considers, for example, whether the action would be time-barred if filed anew in the proper venue, whether the claims are likely to have merit, and whether the action was filed in good faith or "filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper.'" *See Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006) (citations omitted). The Court finds that the interest of justice does not require the transfer of Plaintiff's civil rights claims; the statute of limitations has not run, and the claims are unlikely to have merit, as explained below.

9

Even if Plaintiff's constitutional claims were not subject to dismissal for improper venue, they are subject to dismissal for failure to state a claim. The U.S. Supreme Court has permitted, in extremely limited circumstances, a damages claim against a federal officer in his individual capacity for a deprivation of constitutional civil rights. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("In *Bivens* - proceeding on the theory that a right suggests a remedy – [the United States Supreme] Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'") (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 68 (2001)). To state a *Bivens* claim, a plaintiff must allege the violation of a constitutional right by a federal officer acting under color of federal authority. *Bivens*, 403 U.S. at 389.

In *Bivens*, the Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment. *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Since *Bivens*, the Supreme Court has recognized a *Bivens* remedy in *only two* other cases: *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980).

The Supreme Court has made it clear that expanding the *Bivens* remedy beyond the already recognized contexts is a "disfavored judicial activity." *Abbasi*, 582 U.S. at 135 (quotations omitted). Therefore, a plaintiff may proceed on a *Bivens* action only if the court determines the action survives a two-part inquiry. First, the court must determine whether the claim arises under a new *Bivens* context. If not, the claim may be brought under *Bivens*. However, if the claim

10

involves a new context, the court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

As to the first part of the inquiry, the test is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the United States Supreme] Court[.]" *Abbasi*, 582 U.S. at 139. In other words, courts should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary [based on her gender]; and a claim against prison officials for failure to treat an inmate's asthma [resulting in his death]." *Id.* at 140. Therefore, it is not merely a question of whether a plaintiff's claim arises under the Fourth, Fifth, or Eighth Amendment. "A claim may arise in a new [*Bivens*] context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).

Plaintiff has not shown that a *Bivens* remedy is available for his claims. The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless." *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024). The Tenth Circuit in *Logsdon* found that:

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a

11

court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id*. at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id*. at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit

the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id.*

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program ("ARP") was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

The Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva*, 45 F.4th at 1141 (citation omitted). The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,'. . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id.* (citing *Egbert*, 596 U.S. at 498 (quoting *Malesko*, 534 U.S. at 71)).

13

Based on the reasoning set forth in the recent Tenth Circuit opinions cited above, the Court finds that Plaintiff fails to state a claim for relief under *Bivens*.

In addition to the lack of a *Bivens* remedy and the improper venue, Plaintiff fails to state a claim for violation of his constitutional rights.  His primary complaint is the confiscation of his legal files.  Plaintiff mentions violation of the Fifth Amendment in connection with his legal files.  However, he cannot prevail on his claim that his Fifth Amendment rights were violated because the BOP has an administrative remedy to challenge the confiscation of his property, and the FTCA provides another such post-deprivation remedy.  *Akervik v. Ray*, 24 F. App'x 865, 869 (10th Cir. 2001).  He therefore cannot assert a constitutional claim for the intentional deprivation of property.  *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (explaining an intentional deprivation of property does not constitute a violation of the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available").

If Plaintiff is alleging that the confiscation of his legal files violated his right to access the courts, he also does not state a claim.  "A prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."  *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey,* 518 U.S. 343, 351–55 (1996)).  Plaintiff's allegations fail this test.  He does not connect the deprivation of his legal files to any actual injury.

As for Plaintiff's complaint that Wilson made false accusations against him, resulting in unfair disciplinary action, such claim is barred unless he shows the disciplinary conviction has been invalidated.  *Heck v. Humphrey*, 512 U.S. 477 (1994), held that if a judgment for damages would necessarily imply the invalidity of a criminal conviction or sentence, the action does not

arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See Heck*, 512 U.S. at 486-87. A civil rights action filed by a prisoner "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* applies to prison disciplinary convictions. *See Edwards v. Balisock*, 520 U.S. 641, 648 (1997); *see also Brown v. Cline*, 319 F. App'x 704, 705-06 (10th Cir. 2009) (unpublished). *Heck* and *Edwards* apply in *Bivens* actions. *See Reed v. Smith*, 182 F.3d 933 (10th Cir. 1999).

A favorable judgment in this action would necessarily imply the invalidity of Plaintiff's disciplinary conviction, and Plaintiff fails to allege that his disciplinary conviction has been reversed, declared invalid, expunged, or called into question. Therefore, his claim based on the disciplinary action is premature.

Even if not barred by *Heck*, Plaintiff fails to state a due process claim based on his disciplinary proceedings. Plaintiff does not allege that the disciplinary actions affected the duration of his sentence, and the punishment imposed, 30 days in the SHU with privilege restriction, is not the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that creates a protected liberty interest. *Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015) (citing *Hornsby v. Jones,* 392 F. App'x 653, 655 (10th Cir. 2010), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest); *see also Marshall v. Laird*, 2013 WL 3226632, at *3 (D. Kan. June 25, 2013) ("[A] denial of privileges does not

impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and consequently no liberty interest is at stake where the inmate may be sanctioned with a loss of privileges only."); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477, 1999 WL 638232, at \*3 (10th Cir. Aug. 23, 1999) (concluding that 90-day disciplinary segregation which left inmate without "store privileges, radio, phone calls, etc." were "such conditions . . .  not different in such degree and duration as compared with 'the ordinary incidents of prison life' to be a protected liberty interest under the Due Process clause." (citations omitted))).

Furthermore, Plaintiff does not have a right to dictate where he is housed.  The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").  "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).  Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life.  *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff also mentions the Eighth Amendment, seeming to assert that conditions in the SHU at FCI-McLean amounted to cruel and unusual punishment. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.*

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted). Plaintiff has alleged fairly minor deprivations suffered for short periods of time. He also does not make clear whether he suffered several of the described deprivations or whether they were experienced by other prisoners. Plaintiff has failed to claim a sufficiently serious deprivation regarding his conditions of confinement.

In summary, Plaintiff's constitutional claims are subject to dismissal for improper venue and for failure to state a claim.

18

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 30, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated March 31, 2026, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**